1998 SD 36

**Kenneth E. DAHN, Plaintiff and Appellee,**

v.

**Michael V. TROWNSELL, Defendant and Appellant,**

and

**J.M. Butler, Trustee, J.M. Butler, John Nickels, ada Nickels, Henry Nickels, Belmont V. Trownsell, Harold Trownsell, Pennington County, a political subdivision of the State of South Dakota, the Department of Revenue of the State of South Dakota, the State of South Dakota, the unknown heirs-at-law, the devisees, legatees, executors, administrators, or creditors of any or either of them, of the foregoing named persons who are deceased, along with all persons unknown who have or claim to have any interest or estate in, or lien or encumbrance upon the premises described in the Complaint herein, or any part thereof, Defendants.**

Nos. 20185, 20190.

Supreme Court of South Dakota.

Considered on Briefs Feb. 18, 1998.

Decided April 8, 1998.

Linden R. Evans of Truhe, Beardsley, Jensen, Helmere & Von Wald, Rapid City, for Plaintiff and Appellee.

Joseph M. Butler of Bangs, McCullen, Butler, Foye and Simmons, Rapid City, for Defendant and Appellant.

GILBERTSON, Justice.

[¶ 1.] Michael Trownsell (Trownsell) appeals from the grant of summary judgment in favor of Kenneth Dahn (Dahn) after the trial court concluded that Dahn had properly served notice of his intention to take a tax deed (NITTD) upon Trownsell in a quiet title

action. Dahn has filed a notice of review claiming the trial court should have excluded, as hearsay, certain statements in an affidavit submitted by Trownsell. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] This action was brought by Dahn against Trownsell, and others, to quiet title to a section of land in Pennington County South Dakota. Trownsell appeals the grant of summary judgment in favor of Dahn and claims he was not provided adequate service of Dahn's NITTD, which was issued by Pennington County (County) on June 27, 1995.

[¶ 3.] We briefly summarize South Dakota's statutory scheme governing tax deed sales of realty to assist comprehension of the relevant facts. Each county treasurer is required to "send a written tax bill to each taxpayer against whom a property tax has been assessed." SDCL 10–21–1.1. If the taxes are not paid, the treasurer must give notice by publication or posting and then mail "to any owner of the real property *at his last known address*" a notice that the property will be sold at the annual tax sale on the third Monday of December. SDCL 10–23–2, 10–23–2.1, and 10–23–7 (emphasis added). When property tax payments have been delinquent for a period of one year or more, the treasurer shall hold a sale of the property and issue a tax certificate to the successful bidder. SDCL 10–23–7. The holder of the tax certificate may initiate proceedings to obtain a tax deed three years after the tax sale of property located within "the limits of any municipality" or four years after the tax sale of property located outside the "limits of any municipality." SDCL 10–25–1. Prior to obtaining a tax deed, the owner of record, and certain other interested parties, must be notified of the intention to take a tax deed. SDCL 10–25–3. SDCL 10–25–5 provides for service upon nonresident property owners, such as Trownsell, of the NITTD by publication and mailing a copy of the notice to the nonresidents' "last known address."

[¶ 4.] After completing the requirements of SDCL 10–25–5, the party wishing to obtain a tax deed submits an affidavit of completed service to the county treasurer. SDCL 10–25–8. The right to redeem the tax certificate "shall not expire" until "sixty days after the filing" of this affidavit. *Id.* If the owner, or certain other interested persons, fails to redeem the tax certificate within the sixty days, the holder of the tax certificate receives an "absolute estate in fee simple" subject to certain "taxes, liens and encumbrances." SDCL 10–25–12. After obtaining the tax deed, the purchaser may bring an action to quiet title to the property. The former owner has 180 days from the recording date of the tax deed to contest or avoid the tax deed. SDCL 10–25–44.

[¶ 5.] Trownsell was the sole owner of the Star Lode from 1960 until Dahn initiated this quiet title action in 1996. Trownsell had a history of delinquent taxes on this and another property within County. The Star Lode was previously auctioned by County five times for failure to pay property taxes during his period of ownership. This appeal concerns the sixth auction held in December, 1990, where Dahn, the successful bidder, paid the amount of taxes Trownsell owed and was issued a certificate of tax sale.

[¶ 6.] Just prior to the 1990 sale, the County treasurer mailed a NITTD to Trownsell's last known address in Redondo Beach, California. SDCL 10–23–2.1. This was the only address on file with County. Trownsell has not denied receiving the 1990 NITTD but does deny receiving the subsequent 1995 NITTD. Trownsell resided at the Redondo Beach address until September 1994, when he moved to Mojave, California. He then moved to Tehachapi, California, in June of 1995. Each time he moved he left forwarding addresses with the local post offices. However, he did not notify the County treasurer of his changed address and did not pay any of the property taxes on the Star Lode during these years. Dahn subsequently paid Trownsell's property taxes for the years 1990 through 1996, when he began quiet title proceedings. SDCL 10–25–10.

[¶ 7.] On March 31, 1995, Dahn mailed the NITTD to Trownsell at the Redondo Beach address. It was the only address Dahn was aware of, as it was the only address on file with County. The NITTD did not reach Trownsell and was returned to Dahn's coun-

sel on April 25, 1995, with the stamped notation "Returned to Sender, Forwarding Order Expired" and a handwritten notation of "moved." The returned letter did not have a forwarding address.

[¶ 8.] Dahn attempted to locate Trownsell's current address by searching the records of the County register of deeds, director of equalization, and treasurer. Dahn could not find any address for Trownsell other than the Redondo Beach address. County had been sending annual tax assessments and notices to Trownsell's "last known address" at Redondo Beach for the tax years 1990 through 1995. Trownsell had not utilized the detachable change of address forms contained in the annual tax notices sent by County. Dahn also called directory assistance in California and was informed that Trownsell did not have a telephone number, listed or unlisted, within the state. Dahn then published the NITTD in three local Pennington County newspapers, once per week for two weeks. SDCL 10–25–5. Dahn received no response and on April 27, 1995, filed an affidavit of completed service with County. SDCL 10–25–8. Trownsell failed to redeem the property within the statutory sixty-day period and Dahn was issued a tax deed for the Star Lode. SDCL 10–25–8.1.

[¶ 9.] Dahn recorded the tax deed and on February 13, 1996, Dahn brought a quiet title action. Dahn mailed the summons and complaint to Trownsell at the Redondo Beach address. The summons and complaint were "returned to sender" just as the previous NITTD had been. This time, however, the returned letter was stamped with Trownsell's Mojave, California, address. The summons and complaint was then sent to the Mojave address and the Mojave post office forwarded it to Trownsell in Tehachapi. At the time of mailing, neither Dahn nor County was aware that Trownsell had moved to Tehachapi.

[¶ 10.] Dahn was only able to later obtain Trownsell's Tehachapi address in March, 1996, through a fortuitous chain of events, nearly one year after he initially mailed the notice. Dahn had originally named and mailed a summons and complaint to all prior record holders of the Star Lode. One of these prior owners was Belmont Trownsell, Trownsell's mother, who had obtained title to the property in 1957. Upon receiving the summons and complaint, Belmont contacted Trownsell's brother Robert about the matter. Robert then called Dahn's counsel's office and sent Trownsell's current Tehachapi address. Dahn then mailed a copy of the summons and complaint to Trownsell's Tehachapi address. Trownsell refused to admit service by mail and was personally served on May 14, 1996.

[¶ 11.] On November 1, 1996, Dahn's motion for summary judgment was denied by the circuit court after it concluded that, since Dahn mailed the summons and complaint to the Redondo Beach address with the knowledge that it was not current, his attempt at notification was not reasonably calculated to apprise Trownsell of the proceedings. The circuit court believed that, upon receipt of the returned notice, Dahn should have contacted the Redondo Beach post office to determine Trownsell's current address.

[¶ 12.] On March 27, 1997, Dahn renewed his motion for summary judgment and provided additional facts for the circuit court's consideration. Dahn alleged, among other things, that Trownsell's history of delinquent property tax payments established that he purposely avoided service of the notice and that the circuit court should focus on the attempted service of the NITTD rather than the initial summons and complaint. The circuit court agreed and granted Dahn's motion for summary judgment. Trownsell appeals raising the following issue for our review:

> Whether notice by mail sent to property owner's "last known address" provides adequate notice of a proceeding to sell property for nonpayment of taxes.

## STANDARD OF REVIEW

[¶ 13.] Our standard of review for summary judgment in this context is well settled. This appeal requires us to examine the statutes governing the method of serving notice upon property owners before their rights may be extinguished through a tax sale. Questions of statutory interpretation require de novo review. *Farm Credit Serv. of Mid. v. First State Bank*, 1998 SD 13, ¶ 6, 575

N.W.2d 250 (citing *Maynard v. Heeren,* 1997 SD 60, ¶ 5, 563 N.W.2d 830, 833). Since there are "no factual issues in this case, summary judgment will be affirmed if the trial court correctly decided the legal issue presented." *Id.* (citing *Weiss v. Van Norman,* 1997 SD 40, ¶ 9, 562 N.W.2d 113, 115 (citations omitted)); *Boever v. South Dakota Bd. of Accountancy,* 526 N.W.2d 747, 749 (S.D.1995) (when there are no genuine issues of material fact in reviewing summary judgment motion we are only faced with legal questions which are freely reviewable).

[¶ 14.] The rules of statutory construction are well settled:

> Questions of law such as statutory interpretation are reviewed by the Court de novo.... The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject. But, in construing statutes together it is presumed that the legislature did not intend an absurd or unreasonable result. When the question is which of two enactments the legislature intended to apply to a particular situation, terms of a statute relating to a particular subject will prevail over the general terms of another statute.

*Moss v. Guttormson,* 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17 (citing *U.S. West Communications, Inc. v. Public Utilities Comm'n,* 505 N.W.2d 115, 122–23 (S.D.1993) (citations omitted)).

## ANALYSIS AND DECISION

[¶ 15.] **Whether notice by mail sent to property owner's "last known address" provides adequate notice of a proceeding to sell property for nonpayment of taxes.**

[¶ 16.] The only aspect of the tax deed procedure challenged by Trownsell is the notice provision contained in SDCL 10–25–5, which provides in part:

> Personal service of the notice in the manner provided by law for the service of summons shall be made upon the persons mentioned in §§ 10–25–3 and 10–25–4 as reside within the state. However, if any of the persons are *nonresidents* of the state, the notice may be served upon the nonresidents by publishing the notice once a week for at least two successive weeks in some newspaper printed in the county where the real property is situated[.] In addition to the service by publication the holder of the certificate shall cause to be sent to the persons so served a true copy of such notice through the United States mails, properly addressed, to the *last known address* of each of the persons[.] (Emphasis added.)

[¶ 17.] We are called upon to interpret the meaning of "last known address" to determine whether Dahn has complied with the requirements of SDCL 10–25–5. The phrase is not defined in our statutes. Trownsell argues that the phrase "last known address" should mean "the last address so far as it is reasonably possible to ascertain it with reasonable inquiry." Trownsell maintains that Dahn was not entitled to merely rely upon the Redondo Beach address contained in County title records. Rather, Dahn should have contacted the Redondo Beach post office or prior record holders after the NITTD was returned to ascertain Trownsell's current address. Dahn disagrees and maintains that he has satisfied the requirements of SDCL 10–25–5 by mailing the NITTD to the Redondo Beach address, the only address available to both him and County at the time. Furthermore, Dahn claims that Trownsell had a duty to keep County informed as to his current address. We note initially that a tax-

payer does not forfeit his due process rights by being delinquent.[1] The Fourteenth Amendment to the United States Constitution and the South Dakota Constitution art VI, § 2, require that delinquent taxpayers receive adequate notice and an opportunity to be heard.

> [P]rior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide "notice reasonably calculated, *under all circumstances*, to apprise interest parties of the pendency of the action and afford them an opportunity to present their objections."

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180, 185 (1983) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (emphasis added)).

▆▆▆ [¶ 18.] There is no checklist nor bright-line test to determine if a particular statutory notice provision, such as SDCL 10–25–5, is valid. Rather, we give "due regard for the practicalities and peculiarities of the case" to determine whether the challenged notice provision is constitutionally valid. *Mullane*, 339 U.S. at 314–15, 70 S.Ct. at 657, 94 L.Ed. at 873. The realities of this case are that counties rely upon the cooperation of property owners to provide accurate information so that counties may discharge their taxation duties efficiently and effectively. Furthermore, it is not practical to place the burden upon counties to maintain current addresses on every owner of property within the county. As individual property owners change their residence, it is incumbent upon them to notify counties of their address. It is also not an unduly burdensome task to fill out a change of address form sent with the tax notice and return it to the county. With this in mind we consider whether mailing the NITTD to the only address contained in County records and available to Dahn at the time, was reasonable. SDCL 10–25–5.

[¶ 19.] The Supreme Court in *Mennonite* held that *notice by publication* was constitutionally inadequate to inform a mortgagee that it was entitled to redeem the property before a tax deed was issued.

> Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

*Mennonite*, 462 U.S. at 800, 103 S.Ct. at 2712, 77 L.Ed.2d at 188. Since the publicly recorded mortgage identified and provided the mortgagee's last known address, actual service by mail or in person was required.[2] *Id.*; *see also Lesmeister v. Dewey County*, 75 S.D. 137, 60 N.W.2d 216 (1953) (recognizing that holder of tax sale certificate in tax deed proceedings is required to utilize county records to determine "last known address" of persons entitled to notice).[3]

---

**1.** As early as 1906, this Court has recognized that property owners are chargeable with the knowledge that their land is subject to annual taxation and that if such taxes become delinquent it is the duty of the treasurer to sell the land. *Bandow v. Wolven*, 20 S.D. 445, 454–55, 107 N.W. 204, 207 (1906), *modified on other grounds*, 23 S.D. 124, 120 N.W. 881 (1909). Trownsell had the duty to pay his taxes when they became due. *Id.* Trownsell breached this duty no less than nine different times, six times with regard to the Star Lode and three times with another property located within County. Even in light of Trownsell's history of delinquency, he is entitled to due process of law before being deprived of his property. *Id.* The legislature has enacted a simple statutory scheme to protect property owners' rights by requiring that notice be sent before such rights are extinguished through a tax deed.

**2.** The South Dakota Legislature amended SDCL 10–25–3 in 1991 to provide that judgment creditors be sent notice as per the United States Supreme Court holding in *Mennonite*. In *First National Bank of Eden v. Meyer*, 476 N.W.2d 267 (S.D.1991), this Court held that the amended statute was constitutional but did not address the specific question presented by Trownsell.

**3.** Dahn also relies on the case of *Plocek v. Simpson*, 75 S.D. 258, 63 N.W.2d 262 (1954), which was decided under facts which appear to be similar to those in the present action. We upheld the service of a notice of intention to take a tax deed mailed to a nonresident owner at his "last known" and only address on file with the county. *Id.* Such service was proper even though the notice was returned to sender by the post office. *Id.* at 260, 63 N.W.2d at 263–64.

[¶ 20.] *Mennonite* and its progeny reiterate *Mullane's* requirement that notice by mail or other means of actual service are a "minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party ... *if its name and address are reasonably ascertainable.*" *Mennonite*, 462 U.S. at 800, 103 S.Ct. at 2712, 77 L.Ed.2d at 188 (emphasis added). The United States Supreme Court explained that the "last known address" contained in the county records was "reasonably ascertainable" and because the county failed to utilize an "inexpensive and efficient mechanism such as mail service" the county did not provide adequate notice. *Id.*

[¶ 21.] Dahn's mailing of the NITTD to Trownsell's "last known address" as required by SDCL 10–25–3 and 10–25–5 was "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873. We recognize that following the strict statutory guidelines contained in SDCL 10–25–3 and 10–25–5 cannot guarantee that a property owner receives actual notice in every case. North Dakota has a similar statutory notice scheme and its supreme court has recognized that occasionally, even

> strict compliance with all of [the] requirements for serving notice by registered mail will result in a notice being returned to the county undelivered. When proper service by registered mail does not result in the actual receipt of the notice of the expiration of the redemption period, the published notice is essential to give the person entitled to redeem one last opportunity to learn that the redemption period is about to expire.

Furthermore, we rejected the record owner's contention that the treasurer had a duty to locate his correct address. *Id.* Trownsell argues that, in light of *Mennonite, supra, Plocek* is no longer good law. *Plocek* is of such factual brevity that we are unable to determine what, if any other reasonable steps, were available to the county treasurer in that case. As *Plocek* was decided solely on statutory, rather than constitutional grounds, its current viability is irrelevant to the

*Van Raden Homes, Inc. v. Dakota View Estates*, 546 N.W.2d 843, 854 (N.D.1996).[4] "Where the [person] charged with the duty of giving notice of expiration of the period of redemption to delinquent taxpayers follows the letter of the statute in so doing, ... the requirement as to service of notice is satisfied although the taxpayer does not receive such notice." *Mund v. Rambough*, 432 N.W.2d 50, 54 (N.D.1988) (citation omitted).

[¶ 22.] Dahn complied with the statutory scheme for providing notice to Trownsell by mailing the NITTD to Trownsell's last known address.

> It is the general rule that where the service of notice by mail or registered mail is expressly required or authorized by statute in tax proceedings, and the conditions precedent to mailing, such as determination of sendees, proper addressing, and the timeliness have been fulfilled, the service is complete and constitutes a legal service when the notice is mailed, or registered and mailed, according to the United States postal laws and regulations, by depositing it in a place of mailing, and that *actual receipt thereof is not essential.*

*Id.* (emphasis added).

[¶ 23.] Whether the notice procedures contained in SDCL 10–25–5 are reasonable also depend upon the outcome of the balance between the "interest of the state" and the "individual interest sought to be protected." *Holland v. King*, 500 N.E.2d 1229, 1235 (Ind.Ct.App.1986) (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873 and holding that due process rights were protected by mailing notice of intent to take tax deed to owner's last known address on file with the county). Trownsell's interests include his "right of ownership, possession, and profits derived from the property as well as the risk of erroneous depriva-

outcome of the constitutional issue now before us.

4. The *Van Raden* court also explained that counties may rely upon their own records when identifying "owners and other interested persons for service of the notice" and do not have to ascertain who may have actual but unrecorded interests in the property. *Id.* at 849 (citations omitted).

tion of these rights." *Holland,* 500 N.E.2d at 1235. The state's interests include the "orderly, timely, and efficient collection of taxes and the effect upon these procedures of both the additional cost and time of the burden to search for a taxpayer." *Id.* We agree with the *Holland* court that

given the lengthy time periods and multiple notices throughout the statutory procedure for collection of taxes, leading up to tax sale, redemption period, and issuance of tax deed, we find the balance weighs in favor of the state. Notice to a property owner of a pending tax sale by certified mail at his *last known address* is a means of notice reasonably calculated ... to apprise the owner of the pending tax sale and afford him an opportunity to present his objections.

*Id.* (emphasis added) (relying upon *Mennonite, supra*). After consideration of the outcome of the balance between the "interest of the State" and "the individual interest sought to be protected by the Fourteenth Amendment" we hold that mailing the NITTD to Trownsell's last known address was reasonable.[5] *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873.

[¶ 24.] Dahn had the duty to comply with the statutory scheme detailing the procedures for obtaining a tax deed. SDCL ch 10–25. By requiring Dahn to send his NITTD to Trownsell's "last known address," the legislature unambiguously "placed a duty upon" Trownsell to inform the county of his current address. *Clark v. Jones,* 519 N.E.2d 158, 160 (Ind.Ct.App.1988) (citing *Holland,* 500 N.E.2d at 1233). This is certainly a reasonable requirement. The *Clark* court went on to hold that "[e]ven if the auditor knew that mail was being returned from [the last known address where the tax deed sale and notice were sent], the notice statutes and

constitutional due process requirements do not impose ... a duty to search for an alternative address." Trownsell knew in fact, and was chargeable at law, that he was required to pay annual property taxes on the Star Lode and if he failed his property could be sold. He was delinquent in paying such taxes no less than six times during his ownership, and failed to provide his current address to County, even though he changed his residence three times during a five-year period.

[¶ 25.] We hold that Dahn fully complied with SDCL 10–25–5 by mailing the NITTD to Trownsell's "last known address." To hold otherwise would place undue burdens on the counties to collect taxes for support of local governmental institutions. The counties and purchasers of tax certificates should not be required to engage detectives to ferret out delinquent taxpayers who find it all too financially convenient to be missing. We find Trownsell's additional arguments without merit. As a result, we need not consider Dahn's notice of review.

[¶ 26.] Affirmed.

[¶ 27.] MILLER, C. J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 28.] SABERS, J., concurs in result.

SABERS, Justice (concurring in result).

[¶ 29.] Although I concur based on Trownsell's conduct,[6] I submit that *Plocek v. Simpson,* 75 S.D. 258, 63 N.W.2d 262 (1954), is neither good law nor merely "irrelevant" in light of *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

[¶ 30.] *Mennonite* requires "[n]otice by mail or other means as certain to ensure

---

5. Trownsell argues that the Redondo Post Office erred by returning the notice to Dahn's counsel without a forwarding address and, therefore, Dahn was precluded from ensuring that Trownsell actually received it. We need not consider this claim as it is well settled that "procedural due process rules are shaped by the risk of error inherent in the truth finding process as applied to the generality of cases, not the rare exceptions." *Mathews v. Eldridge,* 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18, 39 (1976). Mailing such notices to the only "last known

address" on file will generally ensure that those affected will receive actual notice. Those affected by the notice should not be able to increase the "risk of error" by consistently failing to provide a current mailing address to counties.

6. Trownsell does not deny receiving delinquent tax notices or the 1990 NITTD, which gave notice of an imminent sale, yet he did nothing to protect his interests.

actual notice ... if [party's] name and address are reasonably ascertainable." 462 U.S. at 800, 103 S.Ct. at 2712, 77 L.Ed.2d at 188. A party's name and address may be "reasonably ascertainable" from sources other than the "last known address" known by the county treasurer. Therefore, *Plocek's* holding that the treasurer is not obligated to look beyond the "last known address" when notice is returned to the sender cannot stand. *Cf. Olivo v. United States,* No. 96 Civ. 2620, 1997 WL 23181, at *4 (S.D.N.Y. Jan. 22, 1997):

> Moreover, courts have not hesitated to find that where the first attempted notice is unsuccessful, but a person's correct address can be obtained by the government through minimal effort, the failure to attempt a second notice violates due process.

*See Aero–Medical, Inc. v. United States,* 23 F.3d 328, 331 (10th Cir.1994); *Montgomery v. Scott,* 802 F.Supp. 930, 936–37 (W.D.N.Y.1992); 1 David B. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 9.03 (1996) ("In general, the courts have required seizing agencies and prosecutors to take reasonable steps to locate the owner of the property and where their first attempt at personal notice does not succeed, to try again.").