1999 SD 53

STATE of South Dakota, Plaintiff
and Appellee,

v.

Milo Walter HIRNING, Defendant
and Appellant.

Nos. 20567, 20571.

Supreme Court of South Dakota.

Considered on Briefs Feb. 24, 1999.

Decided April 21, 1999.

Rehearing Denied May 26, 1999.

Mark Barnett, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, for plaintiff and appellee.

Ramon A. Roubideaux, Rapid City, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] Will probable cause exist to search a passenger when the driver admits to a highway patrol officer that drugs found in the car belong to all the occupants? As probable cause only requires reasonable, individualized suspicion, the all-encompassing admission, together with the other circumstances, created sufficient justification to search the passenger for drugs. We uphold the search and the resulting conviction for possession of methamphetamine.

### Facts

[¶ 2.] On July 20, 1997, at 2:30 a.m., Denise and Billy Mills and defendant, Milo Hirning, were traveling on Highway 12, just east of Aberdeen. Denise drove while Billy sat in the front passenger seat. Hirning sat in back. Highway Patrol Officer Richard Pederson clocked their speed using radar at forty-eight miles per hour, well below the sixty-five mile per hour speed limit. With the odd hour and the car's unusually slow speed, Pederson became suspicious and decided to follow. Then, he noticed an object dangling from the rearview mirror, in violation of South Dakota law. *See* SDCL 32–15–6. He activated his emergency lights to pull the car over.

[¶ 3.] After the car stopped, Pederson directed his spotlight into the vehicle. He saw the passenger in front reaching underneath the seat. Concerned for his safety, Pederson approached the car on the passenger side. He noticed that both Denise and Billy were extremely nervous. Hirning appeared less nervous. Pederson asked Billy what he hid under the seat. Billy denied concealing anything, saying he was merely reaching for a cup, which he showed the trooper. Pederson then asked Denise for her driver's license. Denise began "nervously" searching through various tote bags in the car. Pederson later testified that her behavior made him more concerned for his safety.

[¶ 4.] At this point, Pederson had Billy step out of the car. Using a flashlight, the officer looked underneath the front passenger seat to find what Billy had concealed. He saw a clear brown container. Through the bottom of the container he could see a green leafy substance appearing to be marijuana. He opened it and saw, along with the green leafy material, a small vial containing a clear liquid and a dryer sheet wrapped around a substance having the appearance of methamphetamine. Pederson arrested Billy and placed him in the patrol vehicle.

[¶ 5.] Pederson then asked Denise, without first giving her *Miranda* warnings, if there were any other drugs in the car and to whom the drugs under the seat belonged. At that moment, she was not under arrest, according to Pederson, but she was not free to leave. She claimed there were no additional substances in the vehicle, and that the drugs the officer found "belonged to basically all of them." Denise was then arrested. Armed with the information about the ownership of the drugs, and based on the discovery of drugs in the car, Pederson went back to Hirning. He was asked to step out to be patted down. Pederson later admitted he was searching for drugs and weapons. At no time before the search did Hirning do or say anything to make Pederson suspect he was either armed or dangerous. During the patdown, Pederson felt a few very small bulges in one of Hirning's pockets. Not big enough to be weapons, the bulges, the trooper concluded, seemed to be "nothing major." Pederson then reached inside Hirning's pocket and pulled out four small baggies containing methamphetamine. Hirning was arrested. A later search of the vehicle uncovered drug paraphernalia, a .22 caliber pistol, ammunition, a "Kershaw" knife, and an M80 firecracker.

[¶ 6.] Hirning was indicted on possession of a controlled substance. Also, the State charged him as a habitual offender in a Part II information. Hirning moved to suppress the methamphetamine evidence. Judge Dobberpuhl denied Hirning's motion and later recused himself. On receiving the case, Judge Lovrien reconsidered the suppression

issue on his own cognizance. He declared the search unconstitutional because the patdown went beyond a search for weapons and Pederson's reach into the pocket violated Hirning's Fourth Amendment rights. Nonetheless, the court held the evidence admissible under the inevitable discovery doctrine, as the methamphetamine would have been discovered eventually because Hirning was subject to search incident to arrest after Denise said the drugs in the car belonged to everyone.

[¶ 7.] By stipulation, Hirning was tried to the court on the following facts: (1) On July 20, 1997, Hirning was in Brown County; (2) he possessed methamphetamine in his pocket; (3) he knew the substance was methamphetamine when it was in his pocket; and, (4) he objected to the admission of this evidence and the issue was preserved for appeal. Hirning was convicted of possession of a controlled substance and of being a habitual offender. He was sentenced to ten years in the state penitentiary and ordered to pay a $3,000 fine, and costs. On appeal, Hirning challenges the search of his person as unconstitutional under the Fourth Amendment. By notice of review, the State asserts that the circuit court could have simply upheld the search as incident to arrest, as well as admitted the evidence under the inevitable discovery doctrine.

### Standard of Review

[¶ 8.] We review fact findings under the clearly erroneous standard. *See State v. Almond,* 511 N.W.2d 572, 573–74 (S.D.1994). Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo. *Spenner v. City of Sioux Falls,* 1998 SD 56, ¶ 13, 580 N.W.2d 606, 610. Whether police had a "lawful basis to conduct a warrantless search is reviewed as a question of law." *State v. Sleep,* 1999 SD 19, ¶ 6, 590 N.W.2d 235, 237 (citing *State v. Krebs,* 504 N.W.2d 580, 585 (S.D.1993) (citation omitted)).

[¶ 9.] Today we modify our standard for reviewing decisions on warrantless searches and seizures. Our past standard— abuse of discretion—conflicts with the current Fourth Amendment analysis employed by the United States Supreme Court. *See Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

> [A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

*Id.* at 699, 116 S.Ct. at 1663. Henceforth, we will review these questions de novo.

### Analysis and Decision

[¶ 10.] The circuit court found that the patdown went beyond a search for weapons and was therefore unconstitutional. The lumps Pederson detected were not large enough to be weapons and it was not immediately apparent that the lumps were drugs. The Fourth Amendment of the United States Constitution and Article VI, Section 11 of the South Dakota Constitution protect an individual's right to be free from unreasonable searches and seizures. Included in this guarantee is the requirement that searches and seizures be supported by warrants based on probable cause. US Const amend IV; SD Const art VI, § 11. Warrantless searches are per se unreasonable, apart from a few, settled exceptions. US Const amend IV; SD Const art VI, § 11; *see also Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

[¶ 11.] Reasonableness of a search depends on balancing the public's interest in preventing crime with the individual's right to be free from arbitrary and unwarranted governmental intrusions into personal privacy. *State v. Ashbrook,* 1998 SD 115, ¶ 8, 586 N.W.2d 503, 506–07; *see also Pennsylvania v. Mimms,* 434 U.S. 106, 108–09, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977); *Terry v. Ohio,* 392 U.S. 1, 20–26, 88 S.Ct. 1868, 1879–82, 20 L.Ed.2d 889 (1968). Protective patdown searches occurring as part of an investigatory stop are justified when an officer has reason to believe that the officer's safety or

the safety of others may be compromised by concealed weapons. *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883. Therefore, it is reasonable for officers making an investigatory stop to pat-down potentially armed detainees. *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). At the inception of the search,

> [t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances ,would be warranted in the belief that his safety or that of others was in danger.... And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Terry,* 392 U.S. at 27, 88 S.Ct. at 1883 (internal citations omitted). A limited protective search of this type is not conceived to

> discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable.... So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.

*Adams,* 407 U.S. at 146, 92 S.Ct. at 1923 (internal footnote omitted)(citing *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884). Under the decision in *Minnesota v. Dickerson,* 508 U.S. 366, 373–74, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993), an officer can seize contraband detected during a protective patdown search provided the search does not exceed the limits announced in *Terry.*

[¶ 12.] Here, we need not decide whether Pederson had reasonable grounds to pat Hirning down for weapons, whether the subsequent seizure of drugs in his pocket exceeded the scope of a legitimate patdown, or even whether the inevitable discovery doctrine justified admitting the evidence. After Denise's remark about the ownership of the drugs already found in the car, the trooper

had probable cause to search all the occupants. Hirning has no standing to challenge her admission even if it was unlawfully obtained without *Miranda* warnings. *State v. Shearer,* 1996 SD 52, ¶ 14, 548 N.W.2d 792, 795 (citation omitted).

[¶ 13.] When determining if probable cause existed under various conditions, it makes little difference whether we examine probable cause needed to search or probable cause needed to arrest. Generally, "the same quantum of evidence is required" in either circumstance. 2 Wayne R. LaFave, Search and Seizure § 3.1(b), at 6 (3d ed 1996). " 'Probable cause ... exists where the facts and circumstances within the ... officers' knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a belief by a [person] of reasonable caution that a suspect has committed or is committing an offense.' " *State v. Hanson,* 1999 SD 9, ¶ 13, 588 N.W.2d 885, 889 (quoting *State v. Baysinger,* 470 N.W.2d 840, 845 (S.D.1991)). " '[P]robable cause deals with probabilities that are not technical but only the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act.' " *Id.* (quoting *Baysinger,* 470 N.W.2d at 845). Under the Fourth Amendment, a search ordinarily must be "based on individualized suspicion of wrongdoing." *See Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 653, 115 S.Ct. 2386, 2391, 132 L.Ed.2d 564 (1995).

[¶ 14.] Although "[p]assengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars," *Wyoming v. Houghton,* — U.S. —, —, 119 S.Ct. 1297, 1302, — L.Ed.2d — (1999), probable cause to search a car will not by itself justify a body search of all the passengers. *United States v. Di Re,* 332 U.S. 581, 587, 68 S.Ct. 222, 225, 92 L.Ed. 210 (1948). "Any inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person." *Id.* at 594, 68 S.Ct. at 228. Here, in contrast, the driver did not single out one passenger as the owner. *Cf. Jackson v. State,* 643 A.2d 1360, 1365–66 (Del.1994). Furthermore, the

contraband was found not in the sole possession of one passenger, but under the front seat. Automobile passengers are "often ... engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Houghton,* —— U.S. at ——, 119 S.Ct. at 1302.

■ [¶ 15.] With Denise's all-embracing admission inculpating everyone in the car, the trooper had particularized suspicion to justify searching Hirning. *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979), *reh'g denied,* 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 737 (1980);

*Baysinger,* 470 N.W.2d at 846 (citation omitted). Given the totality of circumstances, the search was reasonable.

[¶ 16.] Affirmed.

[¶ 17.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.