2000 SD 110

STATE of South Dakota, Plaintiff and Appellee,

v.

Fredrick D. BRASSFIELD, Defendant and Appellant.

No. 21174.

Supreme Court of South Dakota.

Considered on Briefs March 22, 2000.

Reassigned July 7, 2000.

Decided Aug. 16, 2000.

Mark Barnett, Attorney General, Paul Cremer, Assistant Attorney General, Pierre, Attorneys for plaintiff and appellee.

Edward G. Albright, Office of Public Defender, Rapid City, Attorneys for defendant and appellant.

GILBERTSON, Justice (on reassignment).

[¶ 1.] Fredrick Brassfield appeals a suspended imposition of sentence for possession of a controlled weapon. We affirm.

## FACTS

[¶ 2.] On March 13, 1999, Brassfield was stopped for speeding by a Rapid City police officer who was accompanied by a police cadet. After the stop, the officer asked Brassfield for his driver's license, proof of insurance and vehicle registration. Brassfield produced his registration and an expired insurance card, but no driver's license. Brassfield also gave the officer his name and date of birth. With this information, the officer was able to confirm through dispatch that Brassfield's driver's license had been suspended. The officer then placed Brassfield under arrest for driving with a suspended license and lack of proof of insurance. After the arrest, the officer and cadet searched Brassfield's vehicle and, under the front passenger seat, found a .410 shotgun with a barrel length of approximately twelve inches.[1]

[¶ 3.] The State subsequently filed an information charging Brassfield with one count of possession of a controlled weapon.[2] Brassfield's counsel moved to suppress the evidence seized after his arrest (*i.e.*, the shotgun) for violation of his Fourth Amendment rights. A suppression hearing was held and the trial court later entered findings of fact, conclusions of law and an order denying suppression on the basis that Brassfield's car was validly searched incident to his arrest. After a court trial, Brassfield was found guilty of possession of a controlled weapon. On August 26, 1999, the trial court entered an amended judgment suspending the imposition of Brassfield's sentence and placing him on probation for two years under various terms and conditions. Brassfield appeals.

## ISSUE 1

[¶ 4.] **Does this Court have jurisdiction of this appeal?**

[¶ 5.] The State argues this Court lacks jurisdiction of this appeal because it is not taken from a final judgment appealable by right. Although Brassfield resists this argument on the basis that the State failed to file a notice of review contesting jurisdiction, it is well settled that, " '[a]n attempted appeal from an order from which no appeal lies is a nullity and confers no jurisdiction on this court, except to dismiss it.' " *State v. Phipps*, 406 N.W.2d 146, 148 (S.D.1987) (citations omitted)(quoting *Oahe Enterprises, Incorporated v. Golden*, 88 S.D. 296, 299, 218 N.W.2d 485, 487 (1974)). Further, " 'this court is required sua sponte to take note of jurisdictional deficiencies[.]' " *Phipps*, 406 N.W.2d at 148 (quoting *State v. Huftile*, 367 N.W.2d 193, 195 (S.D.1985)).

[¶ 6.] There is some support for the State's jurisdictional argument. In criminal matters, SDCL 23A–32–2 permits, "[a]n appeal to the Supreme Court ... by the defendant from [a] final judgment of conviction." "As a general rule, imposition of sentence is required for finality and ...

---

1. SDCL 22–14–6 provides in part that, "[a]ny person who knowingly possesses a controlled weapon is guilty of a Class 6 felony." SDCL 22–1–2(8) defines a "controlled weapon" as "a firearm silencer, machine gun, or short shotgun, as those terms are defined in subdivisions (17), (23), and (46)[.]" SDCL 22–1–2(46) defines a "short shotgun" as "a shotgun having a barrel less than eighteen inches long or an overall length of less than twenty-six inches[.]"

2. Charges relating to Brassfield's driving with a suspended license and lack of proof of insurance were ultimately dismissed.

appealability of a judgment of conviction." 4 Am.Jur.2d *Appellate Review* § 224 (1995). However, there is a significant split of authority on this view. *See* John H. Derrick, Annotation, *Appealability of Order Suspending Imposition or Execution of Sentence*, 51 A.L.R.4th 939 (1987). The United States Supreme Court reached a contrary conclusion in *Korematsu v. United States*, 319 U.S. 432, 434–36, 63 S.Ct. 1124, 1125–26, 87 L.Ed. 1497, 1498–99 (1943), reasoning as follows:

> In [*Berman v. United States*, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204], we held that the appeal was proper where the sentence was imposed and suspended, and the defendant was placed on probation. The probationary surveillance is the same whether or not sentence is imposed. In either case, the probation order follows a finding of guilt or a plea of nolo contendere. Thereafter, the defendant must abide by the orders of the court. He must obey the terms and conditions imposed upon him, or subject himself to a possible revocation or modification of his probation; and under some circumstances he may, during the probationary period, be required to pay a fine, or make reparation to aggrieved parties, or provide for the support of persons for whom he is legally responsible. He is under the "supervision" of the probation officer whose duty it is to make reports to the court concerning his activities, and at "any time within the probation period the probation officer may arrest the probationer wherever found, without a warrant, or the court which has granted the probation may issue a warrant for his arrest." These and other incidents of probation emphasize that a probation order is "an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline."
>
> The difference to the probationer between imposition of sentence followed by probation, as in the Berman case, and suspension of the imposition of sentence, as in the instant case, is one of trifling degree ... In either case, the liberty of an individual judicially determined to have committed an offense is abridged in the public interest. "In criminal cases, as well as civil, the judgment is final for the purpose of appeal 'when it terminates the litigation ... on the merits' and 'leaves nothing to be done but to enforce by execution what has been determined.' " Here litigation "on the merits" of the charge against the defendant has not only ended in a determination of guilt, but it has been followed by the institution of the disciplinary measures which the court has determined to be necessary for the protection of the public [*i.e.*, probation].
>
> These considerations lead us to conclude that the order [suspending the imposition of sentence] is final and appealable.

[¶ 7.] We find the Supreme Court's reasoning in *Korematsu* persuasive. In South Dakota, as in the federal system, the probationary surveillance is similar whether or not a sentence is imposed. *See* SDCL 23A–27–12.1 (court services supervision of probationers); SDCL 23A–27–21 (court services duty to report probationer's failure to meet conditions of probation); SDCL 23A–27–19 (board of pardons and paroles supervision of person on suspended sentence). Under either a suspended imposition or execution of sentence, the probation order follows a finding or admission of guilt. *See* SDCL 23A–27–13 (court may suspend imposition of sentence upon receipt of verdict or plea of guilty); SDCL 23A–27–18 (court may suspend execution of sentence upon a conviction). Thereafter, the defendant must abide by the orders of the court and the terms and conditions imposed upon his probation. *See* SDCL 23A–27–12.1, 23A–27–13, 23A–27–18, 23A–27–18.3, 23A–27–19, 23A–27–21. Violation of these terms and conditions subjects the defendant to a possible revocation or modification of probation. *See* SDCL 23A–27–13, 23A–27–19, 23A–27–20.1, 23A–27–21. Under some circumstances, a defendant may, during the pro-

bationary period, be required to pay a fine or to make restitution to his victims. *See* SDCL 23A–27–18.3(1) & (3). He may even be required to face incarceration in a county jail or in the state penitentiary for limited periods of time. *See* SDCL 23A–27–18.1. He is under the "supervision" of a court services officer whose duty it is to make reports to the court concerning his activities. *See* SDCL 23A–27–12.1, 23A–27–21. Under certain circumstances, including the prevention of escape or the enforcement of discipline, the court services officer may, without order or warrant, detain the probationer and place him in custody. *See* SDCL 23A–27–21.

[¶ 8.] As in the federal system, these incidents of probation make it clear that, despite its relatively low level of intrusiveness, it remains an authorized mode of punishment that abridges the liberty of the defendant. Thus, like the Supreme Court in *Korematsu,* we conclude that an order suspending the imposition of sentence should be considered a final and appealable order under SDCL 23A–32–2. To the extent our holding in *State v. Iverson,* 269 N.W.2d 390, 393 (S.D.1978) is contrary, it is overruled.

## ISSUE 2

[¶ 9.] **Did the trial court err in denying Brassfield's suppression motion?**

[¶ 10.] This Court recently modified its standards for reviewing suppression issues:

> We review fact findings under the clearly erroneous standard. Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo. Whether police had a "lawful basis to conduct a warrantless search is reviewed as a question of law."

*State v. Hirning,* 1999 SD 53, ¶ 8, 592 N.W.2d 600, 603. (citations omitted).

[¶ 11.] "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted without the prior approval of a judge or magistrate are per se unreasonable, subject to only a few specific exceptions." *State v. Peterson,* 407 N.W.2d 221, 223 (S.D.1987). One of these exceptions is a search incident to arrest. "When a policeman has made a lawful *custodial* arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile[.]" *Id* at 224 (emphasis added). The distinction between a custodial and non-custodial arrest was succinctly explained by the Colorado Supreme Court in *People v. Bland,* 884 P.2d 312, 316, n.6 (Colo. 1994):

> A "custodial" arrest is made for the purpose of taking the arrestee to the stationhouse for booking procedures and in order to file criminal charges. A "non-custodial" arrest, however, involves . . . only a temporary detention for the purpose of issuing a notice or summons to the arrestee.

[¶ 12.] The trial court denied suppression on the basis that Brassfield's car was validly searched incident to his arrest. Brassfield argues there was not a valid search incident to his arrest because SDCL 32–33–2 prohibited his custodial arrest under the circumstances of this case.

[¶ 13.] SDCL 32–33–2 provides in part:

> Except as otherwise specifically provided, whenever a person is arrested for a violation of any provision of this title [i.e., apprehension and prosecution of traffic violators] punishable as a misdemeanor, the arresting officer shall take *the name and address of the person and the license number of his motor vehicle and driver's license* and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in the summons or notice. The time shall be at least five days after the arrest unless the person arrested demands an earlier hearing. *The arresting officer shall upon the person's writ-*

*ten promise to appear, release him from custody.* (emphasis added).

[¶ 14.] Statutes "'must be given their plain meaning and effect.'" *State v. Cameron,* 1999 SD 70, ¶ 17, 596 N.W.2d 49, 53 (quoting *Dahn v. Trownsell,* 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539). SDCL 32–33–2 plainly requires the release of a person arrested for violating title 32 after the arresting officer has taken his name and address and the number of his vehicle license and driver's license. Brassfield was arrested for a violation of SDCL 32–12–65(2)[3], an offense in title 32 of the South Dakota Code. During the course of the arrest, the officer took Brassfield's name and address and the number of his vehicle license and driver's license. Thus, Brassfield argues all requirements for his release under SDCL 32–33–2 were met and that the officer should have issued him a summons for a future court appearance and released him on his written promise to appear. Instead, Brassfield contends the officer took him into custody and violated the express terms of SDCL 32–33–2.

[¶ 15.] Under SDCL 32–33–2, Brassfield had to provide the officer his name and address, the license number of the motor vehicle he was driving and his driver's license number before he could be released on his promise to appear. While Brassfield provided the number of his driver's license, he did not provide what SDCL 32–33–2 requires, the number of a *valid* driver's license authorizing him to drive a motor vehicle upon South Dakota highways. SDCL 32–33–2 does not recognize the number of an invalid driver's license as compliance with the statute. For purposes of compliance with this statute, the number of an expired, suspended, revoked, altered or forged driver's license is the same

as no driver's license number. Brassfield was not authorized to drive his vehicle. SDCL 32–12–22. Here, the officer would have violated his duty as a law enforcement officer had he allowed Brassfield to sign a promise to appear and simply drive away. To hold otherwise would create an absurd and unreasonable result that the legislature did not intend. *See Dahn, supra. See also State v. Vocu,* 2000 SD 109, ¶ 10, 615 N.W.2d 623, 625.

[¶ 16.] Since SDCL 32–33–2 did not prohibit Brassfield's custodial arrest under the circumstances of this case, the officers had authority to take him into custody and to conduct a warrantless search of his vehicle incident to his arrest. *Peterson, supra.* It follows that the trial court did not err in denying suppression of the evidence seized as a result of that search.

[¶ 17.] Affirmed.

[¶ 18.] MILLER, Chief Justice, and KONENKAMP, Justice, concur.

[¶ 19.] AMUNDSON, Justice, concurs in part and dissents in part.

[¶ 20.] SABERS, Justice, dissents.

AMUNDSON, Justice (concurring in part, dissenting in part).

[¶ 21.] I concur on issue one. I join Justice Sabers' dissent on issue two for the reasons set forth therein and in my dissent in *State v. Vocu,* 2000 SD 109, 615 N.W.2d 623, since this case involves the same statutory interpretation.

SABERS, Justice (dissenting).

[¶ 22.] SDCL 32–12–65 provides that "[a]ny person who drives a motor vehicle on any public highway of this state at a time when his privilege" is revoked, sus-

---

**3.** SDCL 32–12–65(2) provides:

> Any person who drives a motor vehicle on any public highway of this state at a time when his privilege is:
>
> \*   \*   \*   \*   \*
>
> (2) Suspended is guilty of a Class 2 misdemeanor[.]

pended or canceled is subject to a misdemeanor offense. SDCL 32–33–2 provides, in part:

> *Except as otherwise specifically provided,* whenever a person is arrested for a violation of any provision of this title punishable as a misdemeanor, the arresting officer shall take the name and address of the person and the license number of his motor vehicle and driver's license and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in the summons or notice. . . . *The arresting officer shall upon the person's written promise to appear, release him from custody.*

(emphasis added). SDCL 32–12–65 classifies the offense of driving with a suspended, revoked or canceled license as a misdemeanor. Because that statute is not specifically exempted, SDCL 32–33–2 applies to Brassfield.

[¶ 23.] The majority opinion states, however, that what the legislature intended, in drafting SDCL 32–33–2, was that a driver produce a "valid" driver's license number. It concludes that a suspended or expired driver's license number is not "valid" and therefore, contrary to the statutory language, the driver does. not have to be released upon the driver's written promise to appear.

[¶ 24.] The interpretation of statutes is subject to a de novo standard of review. In so doing, we must look at the wording of the statutes in question and interpret them according to their plain meaning:

> 'The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. *The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used.* Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear,

certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject.'

*Moss v. Guttormson,* 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17 (quoting *U.S. West Communications, Inc. v. Public Utilities Comm'n,* 505 N.W.2d 115, 122–23 (S.D.1993)) (emphasis added).

[¶ 25.] In confining ourselves to the language used, the meaning of SDCL 32–33–2 is clear. The legislature could have very easily included the word "valid" as a modifier to the phrase "driver's license." However, it chose not to. The legislature also could have exempted SDCL 32–12–65 from the application of SDCL 32–33–2, but again it chose not to. *See* SDCL 32–33–2.1, –4 (specifically exempting the application of SDCL 32–33–2). Therefore, the production of a driver's license number, whether suspended or expired, is in strict compliance with SDCL 32–33–2. As stated above, *"[t]he intent of a statute is determined from what the legislature said, rather than what the courts think it should have said."*

[¶ 26.] Setting aside the plain meaning of this statute, the majority opinions' construction of SDCL 32–33–2 also violates our rules governing statutory interpretation. SDCL 32–12–65 provides that it is a misdemeanor offense to drive without a "valid" license. Again, the legislature did not exempt this statute from the application of SDCL 32–33–2, which provides that those who are arrested for misdemeanor offenses *shall* be released from custody once they give a written promise to appear. By inserting the word "valid" as a modifier to "driver's license," this court renders the reconciliation of these statutes impossible and circumvents what the legislature chose not to do. In other words, we

*judicially* exempt the entire statute, SDCL 32–12–65, from the application of SDCL 32–33–2. This exemption was clearly not intended by the legislature, otherwise they would have done it themselves by "specifically providing" so. The majority opinion overlooks: (1) the legislative classification of these crimes as misdemeanors; (2) the clear language and application of SDCL 32–33–2; and (3) the fact that SDCL 32–12–65 is not legislatively exempted from the application of 32–33–2 to arrive at the conclusion that anyone driving with an "invalid" license is vulnerable to a custodial arrest and subsequent search of his vehicle. Obviously, the legislature did not intend this result (or the use of "valid" as a modifier); if it had, it would have employed its own language – "EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED." Because our rules of interpretation prohibit us from reaching a result that was obviously unintended by the legislature, the majority opinion's analysis is dead wrong.

[¶ 27.] The majority opinion is also concerned that "the [police] officer would have violated his duty as a law enforcement officer had he allowed Brassfield to sign a promise to appear and simply drive away." The police officer already violated his "duties" by not complying with SDCL 32–33–2. Furthermore, Brassfield would not be allowed to "simply drive away." This conclusion is absurd. However, it would have been his problem to either have someone come and drive his car for him or pay for towing expenses if the police officer deems it is improperly parked in a restricted area (SDCL 32–30–3).

[¶ 28.] I vote to reverse and remand.