2000 SD 138

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Nancy MARTIN, Defendant and Appellee.**

No. 21344.

Supreme Court of South Dakota.

Considered on Briefs Sept. 18, 2000.

Decided Nov. 1, 2000.

Mark Barnett, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellant.

Gregory T. Brewers, Beresford, South Dakota, Attorney for defendant and appellee.

KONENKAMP, Justice

[¶ 1.] If an out-of-state resident operates a motor vehicle in South Dakota with a valid driver's license from one state and a revoked license from another, does probable cause exist to arrest the driver for driving under revocation? We answer affirmatively and reverse the circuit court's decision to the contrary.

## FACTS

[¶ 2.] Early in the morning of October 11, 1999, North Sioux City police officer Elliot Crayne stopped Nancy Martin's vehicle for speeding. The vehicle bore Iowa license plates and, when the officer checked its registration, he found that it was registered to Martin and another party at an address in Sioux City, Iowa. When the officer asked Martin for her driver's license, however, she gave him a Nebraska license issued to her in October 1998 at an address in Winnebago, Nebraska. With the discrepancy between Martin's Iowa vehicle registration and her use of a Nebraska driver's license, the officer radioed dispatch to verify Martin's driver's license status in both Iowa and Nebraska. Dispatch reported that Martin had a valid Nebraska license, but it also reported that her license in Iowa was revoked. Based on this information, the officer arrested Martin for driving with a revoked license.[1]

[¶ 3.] When a person is arrested for driving with a revoked license, it is the policy of the North Sioux City Police Department to have the person's vehicle towed to an impound location. It is also the Department's policy to inventory any valuables left inside the vehicle before it is towed. Acting in accord with this policy, Officer Crayne inventoried Martin's vehicle after her arrest. His findings were relayed to the trial court during the following exchange at the suppression hearing:

Q And did you find anything, and if so, where, in relation to contraband?

A Yes, I did. In the front seat of the vehicle, I found a black backpack. Within the black backpack I found a small black change purse. When opened, I discovered two small blue Ziplock baggies with a white powder inside also.

Q Okay. And you – I guess you inventoried this small black purse for what possibly?

A Cash, money.

Q Okay. What else did you find?

A Lying inside of the backpack, I found stem seeds, which I believed to be marijuana.

[¶ 4.] Martin was indicted on one count of possession of a controlled substance, one count of possession of marijuana, and one count of driving with a revoked license. Martin's counsel moved to suppress the evidence seized from her vehicle on the grounds that her arrest and the related inventory search were invalid. After a hearing on the motion, the trial court entered findings of fact, conclusions of law, and an order suppressing the evidence. We granted the State's petition for intermediate appeal.

## ISSUE

[¶ 5.] **Did the trial court err in suppressing the evidence seized from Martin's vehicle?**

[¶ 6.] We review factual findings under the clearly erroneous standard, and once the facts have been decided, the application of a legal standard to those facts is a question of law reviewed de novo. *State v. Hirning*, 1999 SD 53, ¶ 8, 592 N.W.2d 600, 603. Probable cause to arrest exists when an officer has reasonably trustworthy information that a suspect has committed or is committing an offense. *Id.* at ¶ 13, 592 N.W.2d at 604. We examine the arresting officer's actions under the totality of circumstances. *State v. Hanson*, 1999 SD 9, ¶ 13, 588 N.W.2d 885, 890. Whether a lawful basis existed to conduct a warrantless search is reviewed de novo as a question of law. *State v. Buchholz*, 1999 SD 110, ¶ 9, 598 N.W.2d 899, 902.

1. SDCL 32–12–65(1) provides:
   Any person who drives a motor vehicle on any public highway of this state at a time when his privilege is:

   (1) Revoked is guilty of a Class 1 misdemeanor[.]

[¶ 7.] The circuit court ruled that Officer Crayne did not have a lawful basis to conduct the warrantless search of Martin's vehicle because he lacked probable cause to arrest Martin. The court further concluded that this lack of probable cause invalidated the arrest and the related inventory search of Martin's vehicle. We hold that based on a practical and reasonable view of the totality of the facts known to Officer Crayne at the time of Martin's arrest, there was adequate probable cause to support the arrest and to validate the related inventory search of Martin's vehicle.

[¶ 8.] The circuit court placed heavy emphasis on its finding that Officer Crayne knew Martin had a valid Nebraska driver's license. Therefore, the court concluded that the officer knew Martin had valid South Dakota driving privileges under SDCL 32–12–24 [2] and that there was no basis for him to arrest her for driving with a revoked license. Yet the trial court ignored in its findings and conclusions that the officer *also knew* that Martin's driver's license in Iowa had been revoked.[3] Thus, the officer was confronted with conflicting information on whether Martin had a valid out-of-state driver's license. It does not fall upon an arresting officer at the scene to sort through the available information and make a "fine resolution of conflicting evidence." *See State v. Johnson,* 660 So.2d 942, 946 (La.Ct.App.1995)(determination of probable cause does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands). Officer Crayne was not obligated and could not be expected to have sorted out at the scene whether Martin's privilege to drive on South Dakota's highways was valid with a Nebraska license or invalid under Iowa's revocation. These are matters more properly decided in subsequent legal proceedings.

[¶ 9.] The issue for arresting officers is whether they have trustworthy information sufficient to warrant a reasonable belief that a suspect is committing an offense. *Hirning, supra.* In this instance, the officer possessed such information and, therefore, his arrest of Martin and the inventory search of her vehicle were valid. *See U.S. v. Caves,* 890 F.2d 87, 93 (8th Cir.1989)(inventory search constitutionally permissible if individual whose possession is to be searched has been lawfully arrested and search satisfies the Fourth Amendment standard of reasonableness). *See also State v. Flittie,* 425 N.W.2d 1, 6 (S.D.1988)(inventory search of vehicle is an incidental administrative step following arrest). It follows that the trial court erred in suppressing the evidence seized as a result of the search.

[¶ 10.] Reversed and remanded.

[¶ 11.] MILLER, Chief Justice, and GILBERTSON, Justice, concur.

[¶ 12.] SABERS and AMUNDSON, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 13.] A plurality of this Court has determined that a person driving with a revoked, suspended or expired license is sub-

---

2. SDCL 32–12–24 provides:

   A nonresident who is at least sixteen years of age and who has in his immediate possession a valid operator's license issued to him in his home state or country may operate a motor vehicle in this state without a license under this chapter.

3. At the suppression hearing and in this appeal, Martin's counsel repeatedly took the position that it was only Martin's in-state driving privileges in Iowa that were revoked and not her driver's license. However, there was never any such evidence to this effect. Officer Crayne consistently testified during the suppression hearing that he sought to verify Martin's "license" status at the time of the arrest and that it was her "license" that was revoked. Whether that ultimately proves to be accurate is a matter more properly decided by a trier of fact after a trial or evidentiary hearing, not by a law enforcement officer making a probable cause determination at the scene of a potential traffic violation.

ject to arrest, search, interrogation, and having the contents of their vehicle inventoried. *See State v. Vocu*, 2000 SD 109, ¶ 11, 615 N.W.2d 623; *State v. Brassfield*, 2000 SD 110, ¶ 16, 615 N.W.2d 628. This intrusion is unwarranted and flies in the face of statutory authority. *See Vocu*, 2000 SD 109, ¶¶ 16–21, 615 N.W.2d at 626–28 (Amundson, J., dissenting); *Brassfield*, 2000 SD 110, ¶¶ 22–27, 615 N.W.2d at 632–34 (Sabers, J., dissenting).

[¶ 14.] SDCL 32–12–65 provides that "[a]ny person who drives a motor vehicle on any public highway of this state at a time when his privilege" is revoked suspended or canceled is subject to a misdemeanor offense. Additionally, SDCL 32–33–2 provides in relevant part:

> *Except as otherwise specifically provided*, whenever a person is arrested for a violation of any provision of this title punishable as a misdemeanor, the arresting officer shall take the name and address of the person and the license number of his motor vehicle and driver's license and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in the summons or notice.... *The arresting officer shall upon the person's written promise to appear, release him from custody.*

(emphasis added). Because driving with a suspended, revoked, or canceled license is a misdemeanor and not specifically exempted from SDCL 32–33–2, that statute applies to Martin. Therefore, "the arresting officer shall upon [Martin's] written promise to appear, release [her] from custody." SDCL 32–33–2.

[¶ 15.] Martin was not released from custody as provided by SDCL 32–33–2. Instead, she was arrested, her vehicle impounded, and its contents inventoried and seized. The contents illegally seized by law enforcement as a result of the illegal detention should be suppressed.

[¶ 16.] By ignoring the specific requirements of SDCL 32–33–2, a plurality of this Court subjects anyone driving with a re-

voked, suspended or canceled license to custodial arrest and the illegal search that follows such arrest. Such an interpretation eviscerates the protection provided by the South Dakota Legislature and is contrary to the plain meaning of the statutes. *See Vocu*, 2000 SD 109, ¶¶ 16–21, 615 N.W.2d at 626–28 (Amundson, J., dissenting); *Brassfield*, 2000 SD 110, ¶¶ 22–27, 615 N.W.2d at 632–34 (Sabers, J., dissenting).

[¶ 17.] Therefore, I respectfully dissent for these reasons and the reasons stated in *Vocu* and *Brassfield*. *See Vocu*, 2000 SD 109, ¶¶ 16–21, 615 N.W.2d at 626–28 (Amundson, J., dissenting); *Brassfield*, 2000 SD 110, ¶¶ 22–27, 615 N.W.2d at 632–34 (Sabers, J., dissenting).

[¶ 18.] AMUNDSON, Justice, joins this dissent.