1999 SD 71

Joni RABENBERG, Acting Administrator, of the South Dakota Human Services Center, a/k/a George Mickelson Center for the Neurosciences, Petitioner and Appellee,

v.

Bernard RIGNEY, Appellant.

No. 20500.

Supreme Court of South Dakota.

Argued March 24, 1999.

Decided June 16, 1999.

Michael D. Stevens of Blackburn, Stevens & Fox, Yankton, for petitioner and appellee.

David M. Hosmer and Tamara D. Lee, Yankton, for appellant.

MILLER, Chief Justice.

[¶ 1.] A patient appeals the trial court's order granting the George S. Mickelson Center for Neurosciences (Center)[1] authority to administer psychotropic medication to him. We affirm.

## FACTS

[¶ 2.] Bernard Rigney, who has been diagnosed as chronic paranoid schizophrenic, was involuntarily committed by court order to the Center on February 8, 1996. He remained involuntarily committed until January 6, 1997, at which time he left the Center. On May 23, 1997, he was again involuntarily committed to the Center and at each of his subsequent review hearings was recommitted. On February 3, 1998, Joni Rabenberg, acting director of the Center, petitioned the circuit court for the authority to administer psychotropic medications to Rigney. The court granted the order and Rigney appeals.[2]

1. The facility was formerly known as the South Dakota Human Services Center.

2. Counsel for the Center has asked us to dismiss the appeal as moot, since the order being appealed has been superseded by a subsequent order entered by the trial court on

[¶ 3.] On appeal, Rigney raises the following issues:

1. Whether Rabenburg met the burden of production for expert testimony.
2. Whether the criteria required by the statute was met for purposes of imposing the court-ordered psychotropic medication.
3. Whether the order to medicate is unconstitutional because it is overly broad.

## STANDARD OF REVIEW

[¶ 4.] We review the trial court's findings of fact under the clearly erroneous standard. *In re Estate of O'Keefe,* 1998 SD 92, ¶ 7, 583 N.W.2d 138, 139. "Clear error is shown only when, after review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" *Cleveland v. Tinaglia,* 1998 SD 91, ¶ 16, 582 N.W.2d 720, 724 (citations omitted). "Conclusions of law are reviewed de novo." *Id.* "Statutes are interpreted 'under a de novo standard of review without deference to the decision of the trial court.'" *Id.* (quoting *In re Estate of Jetter,* 1997 SD 125, ¶ 10, 570 N.W.2d 26, 28 (citations omitted)).

## DECISION

[¶ 5.] **1. Rabenburg met the requirements of SDCL 27A–12–3.13.**

[¶ 6.] SDCL 27A–12–3.13 sets forth the requirements that must be met before a court may issue an order to medicate. It provides as follows:

> The administrator or attending psychiatrist or facility director may petition the circuit court for the authority to administer psychotropic medication to an involuntarily committed patient if, in the opinion of the administrator or facili-

March 16, 1999, which again authorized the Center to administer psychotropic medication to Rigney. Because of the continuing nature of this treatment, and the importance of the issues presented, we have declined to dismiss the appeal as moot.

ty director or attending psychiatrist and the person's treating physician, psychotropic medication will be medically beneficial to the person and is necessary because:

(1) The person presents a danger to himself or others;

(2) The person cannot improve or his condition may deteriorate without the medication; or

(3) The person may improve without the medication but only at a significantly slower rate.

[¶ 7.] Rigney claims that the language of SDCL 27A–12–3.13, specifically the word "and" in the phrase "and the person's treating physician," clearly requires two individuals to testify as to the need for psychotropic medication. He argues that Rabenburg did not meet the statutorily required criteria, because only his treating physician testified at the hearing as to his need for such medication. We find his argument to be without merit. ·

[¶ 8.] In determining the intent of SDCL 27A–12–3.13, we must look to the statute as a whole and to other statutes relating to the same subject. *Maynard v. Heeren*, 1997 SD 60, ¶ 13, 563 N.W.2d 830, 835. The "[w]ords and phrases in [the] statute must be given their plain meaning and effect." *Dahn v. Trownsell*, 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539 (citations omitted). "When a statute's language is clear, certain and unambiguous, our interpretation is confined to declaring its meaning as clearly expressed." *Id.* (citations omitted).

[¶ 9.] We find the language of SDCL 27A–12–3.13 to be clear, certain, and unambiguous. It clearly sets forth the criteria that must be met before an admin-

istrator, attending psychiatrist or facility director may *petition* the circuit court for the authority to administer psychotropic medication. It requires that two individuals concur as to the *need* for medication. It does not, as Rigney claims, require the *testimony* of two individuals as to that need. The statute cannot be interpreted to set forth a testimonial requirement, and this Court cannot "add modifying words to the statute or change the terms." *City of Sioux Falls v. Ewoldt*, 1997 SD 106, ¶ 13, 568 N.W.2d 764, 767 (citation omitted).[3]

[¶ 10.] Considering the foregoing, together with a review of the other statutory enactments relating to the same subject, we find no support for Rigney's claim.

[¶ 11.] **2. The statutory requirements for imposing court-ordered psychotropic medication were met.**

[¶ 12.] South Dakota recognizes that individuals who are involuntarily committed have the right to refuse psychotropic medication. *See* SDCL 27A–12–3.12. However, a court may order the administration of the medication if

[it] finds by clear and convincing evidence that the person is incapable of consenting to treatment with psychotropic medication because the person's judgment is so affected by mental illness that the person lacks the capacity to make a competent, voluntary, and knowing decision concerning the medication and the administration of the recommended psychotropic medication is essential under the criteria in § 27A–12–3.13[.]

SDCL 27A–12–3.15.

[¶ 13.] SDCL 27A–12–3.13 sets forth the criteria for determining the necessity of

---

**3.** Any possible confusion has been eliminated by the 1999 Legislature's amendment of SDCL 27A–12–3.13. By section 2 of SB 54 the first sentence of the statute was amended so that it now reads:

The administrator or attending psychiatrist or facility director may petition the circuit court for the authority to administer

medication to an involuntarily committed patient if, after a personal examination, the person's treating physician and the medical director or attending psychiatrist believe psychotropic medication will be medically beneficial to the person and is necessary because:....

the administration of psychotropic medication. It states the criteria as follows:

(1) The person presents a danger to himself or others;

(2) The person cannot improve or his condition may deteriorate without the medication; or

(3) The person may improve without the medication but only at a significantly slower rate.

[¶ 14.] Rigney argues that the trial court erred in issuing its order to medicate, because the statutory criteria had not been met. We disagree.

■ [¶ 15.] Rabenburg called one witness, Dr. Chung Tuan, to testify as to Rigney's condition and his need for psychotropic medication.[4] Dr. Tuan, who at the time of the hearing had been employed by the Center for twenty-two years, is a board-certified psychiatrist and Rigney's physician. After reviewing his testimony, we find that it was sufficient to support the court's decision. *See generally In re Perona*, 294 Ill.App.3d 755, 229 Ill.Dec. 11, 690 N.E.2d 1058, 1066 (Ill.App. 4 Dist.1998) (citation omitted) (stating that the testimony of one uncontested expert witness and the defendant's behavior in court are sufficient to meet burden of proof).

[¶ 16.] First, Dr. Tuan's testimony supported the court's finding that Rigney was unable to make a competent, informed and voluntary decision about his need for medication. He testified that Rigney had been diagnosed as chronic paranoid schizophrenic, a severe mental illness. He stated that Rigney suffered from delusions,[5] and that his thoughts, perception of reality, emotional process, judgment and behavior had been impaired because of his mental illness. He disclosed that Rigney refused to attend treatment team meet-ings, to discuss medication, and to speak individually with him.[6] Dr. Tuan further testified that, because Rigney is unwilling to believe that he has a mental illness, he finds no need for medication. Therefore, Rigney is absolutely incompetent to make a decision about his need for psychotropic medication.

[¶ 17.] Dr. Tuan's testimony also supported the court's findings that Rigney would be considered a danger to himself or others and that without psychotropic medication his condition would not improve and would deteriorate. He testified that, if Rigney were not hospitalized, he would be unable to care for his basic needs. He also stated that Rigney could be considered a danger to others, because of his increased hostility and his periods of abusive behavior to the Center's staff. Dr. Tuan further testified that, without the psychotropic medication, Rigney's condition would deteriorate and he would have no chance for improvement. However, with the medication Rigney's delusions and hostility could be controlled, and a possibility exists that Rigney could eventually be moved to a less restrictive facility. Dr. Tuan further stated that the medication was essential for a successful treatment plan.

[¶ 18.] Therefore, we find that Dr. Tuan's testimony clearly and convincingly established that Rigney lacked the capacity to make an informed, voluntary, competent decision concerning his need for psychotropic medication. In addition, the testimony also established the necessity for the Center to administer such medication.

### [¶ 19.] 3. The order to medicate was not unconstitutional.

■ [¶ 20.] The trial court issued an order to medicate on February 27, 1998.

---

4. Rigney called no witnesses and refused to attend the hearing.

5. Dr. Tuan testified that, among other things, Rigney believes he is receiving and sending messages through a computer chip located in his brain; that the hospital is stealing money from him; that Minnehaha County authorities are stealing money from him; and that he has been injected with the AIDS virus.

6. Dr. Tuan testified that Rigney's delusions have interfered with his communication with Rigney. Rigney refuses to speak to Dr. Tuan because he believes the Center has stolen money from him.

In the order, the court authorized the Center to administer psychotropic medications to Rigney for a period not exceeding a year, unless an earlier termination occurred pursuant to SDCL 27A–12–3.16. It further authorized the Center to conduct necessary laboratory and nutritional assessments to monitor the administration of the medication. In addition, it ordered the Center's medical director and Rigney's treating physician to review, every thirty days, the need for the medication. It also ordered them, if they determined that the medication was a necessary part of the treatment plan and medically beneficial to Rigney as provided in SDCL 27A–12–3.13, to include in Rigney's medical records a written evaluation stating the reasons for the need for the medication, pursuant to SDCL 27A–12–3.16.

[¶ 21.] Rigney claims the order is unconstitutional as overly broad. He specifically claims his rights to bodily integrity and due process were violated by the order in the following ways: (1) it did not specifically state which medication the Center would administer to him; (2) it allowed for laboratory and nutritional assessment to monitor the medication; and (3) it failed to require a judicial hearing for medication changes. We disagree.

[¶ 22.] Our review of the order shows that it is a mechanism to provide the Center with the authorization necessary to administer psychotropic medication to Rigney. Its purpose is to provide the Center with the authorization, guidance, and instruction necessary for the Center to administer and monitor the need for such medication. To meet its purpose, it required, as does South Dakota law, that the physicians and medical director of the Center exercise their professional judgment when making medication treatment decisions. *See* SDCL 27A–12–3.16.[7]

[¶ 23.] We find that the trial court was not required to name the precise medication or to determine the proper treatment plan for Rigney, which appears to be what he is suggesting. *See* SDCL 27A–12–3.16; *see also In Re Barry B.*, 295 Ill.App.3d 1080, 230 Ill.Dec. 404, 693 N.E.2d 882, 887 (Ill.App. 2 Dist.1998) (stating the order to medicate was legally sufficient even though it did not specifically state the medication). Medication determinations and treatment plans are best left to the appropriate professionals, not the court. *See generally Youngberg v. Romeo*, 457 U.S. 307, 321, 102 S.Ct. 2452, 2456, 73 L.Ed.2d 28, 41 (1982) (adopting the rationale of the court below that "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made"); *see also Morgan v. Rabun*, 128 F.3d 694, 698 (8thCir.1997) (citing *Youngberg*, 457 U.S. at 323, 102 S.Ct. at 2462, 73 L.Ed.2d at 42) (stating a presumption exists that "the decisions made by professionals are correct"). We conclude, therefore, that the order did not violate Rigney's right to bodily integrity or due process and, thus, was not unconstitutional.

[¶ 24.] In addition, we find Rigney's claims of equal protection and statutory rights' violations to be totally lacking in merit. Therefore, they need not be addressed.

[¶ 25.] Affirmed.

[¶ 26.] AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

[¶ 27.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 28.] The legislature established the requirements that must be met before a court may issue an order to forcibly medicate a patient. The legislature did so by statute. SDCL 27A–12–3.13. The majority opinion states that "[w]ords and phrases in [the] statute must be given their plain

---

7. SDCL 27A–12–3.16 was also amended by SB 54 of the 1999 Legislature; however, the amendments are not material to this issue.

meaning and effect." *See* ¶8 (citing Dahn v. Trownsell, 1998 SD 36, ¶14, 576 N.W.2d 535, 539 (citations omitted)). However, the majority opinion fails to do so.

[¶29.] The statute provides that the administrator or facility director or attending psychiatrist *"and"* the person's treating physician must agree that psychotropic medication will be medically beneficial to the person. The plain meaning and effect of the word "and" is that two things are required. In other words, the testimony of at least two people. The majority opinion claims that the statute does not set forth a testimonial requirement. However, the majority opinion does not cite any case from any jurisdiction to support the deletion of the word "and" based on the ruse of "no" testimonial requirement. How else would one establish that all of the requirements of the statute are met other than by presenting testimony from the administrator or facility director or attending physician *"and"* the individual's treating physician?

[¶30.] I agree that the language of SDCL 27A–12–3.13 is *clear, certain* and *unambiguous.* It clearly means exactly the opposite of what the majority opinion claims it means. The decision to forcibly medicate an individual is not one to be made lightly. The United States Supreme Court has stated:

> The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty. The purpose of the drugs is to alter the chemical balance in a patient's brain, leading to changes, intended to be beneficial, in his or her cognitive processes. While the therapeutic benefits of antipsychotic drugs are well documented, it is also true that the drugs can have serious, even fatal, side effects.

*Washington v. Harper,* 494 U.S. 210, 229, 110 S.Ct. 1028, 1041, 108 L.Ed.2d 178 (1990). Before an individual is forcibly medicated, it is imperative that the individual's due process rights be protected. SDCL 27A–12–3.13 requires that the administrator or facility director or attending psychiatrist *"and"* the individual's treating physician agree that psychotropic medication will be medically beneficial and is necessary. Not only must two people concur in the need for medication, but they must *both* testify at the hearing in order to fully protect the individual's rights and ensure that the statutory requirements are met. Before an individual is forcibly medicated and involuntarily subjected to the potentially dangerous side effects of antipsychotic drugs, he should be allowed to cross-examine those advocating for the administration of medication. Those seeking to forcibly medicate carry the burden of proving that the statutory requirements have been met and should be held to a strict construction of the statute.

[¶31.] In addition, I disagree with the majority opinion's claim that the 1999 legislative amendment eliminated "any possible confusion." First, the amendment simply changes the words "in the opinion of" to "believe," which is basically the same standard. Secondly, the amendment adds a new requirement that the person's treating physician *AND* the medical director or attending physician *MUST* personally examine the involuntarily committed patient *before* stating their belief. The plain meaning and effect is, once again, the exact opposite claimed by the majority opinion.[8]

[¶32.] We should reverse and remand and make the State meet the legislatively established statutory requirements before

---

8. To my knowledge, none of the criminal statutes in South Dakota contain the language "this is a testimonial requirement." Under the precedent of this case, the majority could eliminate the necessity of proving the key elements of any crime simply by stating that those key elements were not testimonial requirements.

If that happens, **GOOD–BYE CONSTITUTION, HELLO HITLER.**

they can forcibly medicate an involuntarily committed patient. Therefore, I dissent.