#29943-a-MES
**2023 S.D. 12**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JEREMY JOHNSON, Administrator,
S.D. Human Services Center,                   Petitioner and Appellee,

v.

B.T.,                                         Respondent and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DAVID KNOFF
Judge

* * * *

GARRETT J. HORN
Yankton, South Dakota                         Attorney for respondent
                                              and appellant.


SCOTT B. CARLSON
Special Assistant Attorney General
Department of Social Services
Pierre, South Dakota                          Attorneys for petitioner
                                              and appellee.

* * * *

CONSIDERED ON BRIEFS
NOVEMBER 8, 2022
OPINION FILED **03/01/23**

#29943

SALTER, Justice

[¶1.]        After B.T.'s involuntary commitment to the Human Services Center (HSC), its administrator petitioned the circuit court for an order allowing the HSC to administer psychotropic medication to B.T. without his consent.  The court conducted an evidentiary hearing and granted the petition, allowing the HSC to administer psychotropic medication to B.T. for up to one year, subject to certain conditions.  B.T. appeals, alleging the court granted the petition without sufficient evidence.  We affirm.

## Factual and Procedural Background

[¶2.]        B.T was admitted to the HSC pursuant to an emergency commitment after reports that he was exhibiting manic, delusional, and threatening behavior, all connected to his fervent religious views.  He was later involuntarily committed following a hearing before the Yankton County Board of Mental Illness.  *See* SDCL 27A-10-9.1 (authorizing a board of mental illness, following a review hearing, to order a person's involuntary commitment "for an initial period not to exceed ninety days").

[¶3.]        This appeal arises from a separate, but related, proceeding in which the HSC, through its administrator, Jeremy Johnson, sought an order from the circuit court to administer psychotropic medication to B.T. without his consent.  The HSC petition, signed by counsel, alleged that B.T.'s treatment plan includes the

-1-

administration of psychotropic medication but that B.T. has refused to consent to this form of treatment.[1]  The petition further alleged:

- [B.T.] lacks the capacity to make decisions regarding [his] own treatment with psychotropic medication.

- [B.T.] presents a danger to self or others; [B.T.'s] condition cannot improve or may deteriorate without medication; or [B.T.] may improve without the medication but only at a significantly slower rate.

[¶4.]       The circuit court appointed counsel for B.T. and conducted an evidentiary hearing on the HSC's petition.  *See* SDCL 27A-12-3.14 (providing notice and hearing procedures).  B.T. did not appear at the hearing, and his counsel waived his client's appearance.  *See* SDCL 27A-12-3.19 (stating a person subject to a petition for an order to medicate "may appear personally at any hearing and testify on his or her own behalf, but the person may not be compelled to do so").

[¶5.]       The HSC presented the testimony of Christopher Davidson, M.D., who is an HSC psychiatrist.  Dr. Davidson stated he was "standing in for" B.T.'s attending psychiatrist, Dr. Kleinsasser, who was unavailable.  Although Dr. Davidson stated B.T. "wasn't officially my patient[,]" Dr. Davidson testified that he knew B.T. because he was housed "on the unit that I cover" and had met with him the previous day "for a fair amount of time[.]"  Dr. Davidson had also reviewed B.T.'s medical records and spoke to Dr. Kleinsasser about B.T.'s condition and treatment.

---

1.    B.T. has, at intermittent times, consented to the administration of psychotropic medication.

[¶6.]     Dr. Davidson testified that B.T. has been diagnosed with Bipolar Disorder Type 1 with psychotic features and described some of B.T.'s behavior:

> He has quite a bit of energy and a strong belief in his mission to educate people about the Geneva Bible and so we had a long talk -- or not a long talk, but a significant talk about the King James version of the Bible versus the Geneva version. And [B.T.] very strongly believes that he needs to let things be known about what's going to happen in the world, that we could all be in danger. And he, when people try to stop him, becomes impatient and irritable. He can jump to conclusions and occasionally he'll become very suspicious or paranoid that he's being persecuted, so then he will refuse to be compliant with medications and --he hasn't made outright threats that I -- you know, that he would hurt a specific person, but many people have felt, even as recently as yesterday, that he was being too agitated and threatening and we had to take him to the intensive treatment unit for him to calm down.

[¶7.]     In his responses to a series of questions, Dr. Davidson confirmed that B.T. lacks the capacity to make competent decisions about his care and the use of psychotropic medication and that without psychotropic medication, B.T. would be a danger to himself or others. Dr. Davidson also described B.T.'s treatment plan which includes using psychotropic medication as well as keeping B.T. in a safe environment where his physical condition can be monitored for the presence of side effects from the medication. According to Dr. Davidson, these potential side effects could range from fatigue and slowness of thought or motion to "rare dangers" involving risks to kidney, liver, and bone marrow functioning.

[¶8.]     Dr. Davidson also expressed a lack of optimism about B.T.'s mental health prognosis in the absence of psychotropic medication. In Dr. Davidson's view, B.T.'s mental condition would either deteriorate, fail to improve, or improve at a much slower rate than it would with the use of psychotropic medication.

#29943

[¶9.] The HSC also introduced a written report completed by another HSC psychiatrist, Ramesh Somepalli, M.D. Dr. Somepalli provided a "consult" or assessment of B.T. one day after his admission to the HSC which Dr. Somepalli noted was prompted by B.T. "exhibiting manic and psychotic symptoms in [his] community" where he was alleged to be "delusional, verbally and physically threatening." Dr. Somepalli observed that B.T. continued to "exhibit manic symptoms and [ ] [was] religiously preoccupied and grandiose" at the time of his assessment. B.T. refused to take medications and stated that "God [is] helping him[.]" Dr. Somepalli concluded that B.T.'s "judgment and insight are severely impaired" and that he is "not competent to make an informed decision regarding treatment of his mental illness."

[¶10.] At the end of the hearing, the circuit court granted the HSC's petition to administer psychotropic medication without B.T.'s consent in an oral decision, complete with findings of fact. Applying a clear and convincing standard of proof, the court found:

- [B.T.] has a diagnosis of Bipolar Type 1 with psychotic features; that he has been taking some medications, although there's been some difficulty and some resistance to the medications.

- [B.T.'s] bipolar diagnosis has been exhibiting itself with irritability, over-exuberance. He's becoming paranoid about what's happening in the world, feels he – it's to the point where he feels persecuted. He gets agitated and threatening. He's got some strong religious beliefs. The Court finds that the beliefs have gotten to the point where they've really gone sort of beyond religious beliefs and he kind of fixates on those to where he does feel persecuted and becomes agitated.

- [B.T.'s] judgment is impaired by his mental illness to such an extent that . . . he lacks capacity to make a competent,

-4-

voluntary and knowing decision regarding taking psychotropic medications. He is a danger to himself in that he cannot provide for his basic human needs, provide for a safe environment.

- [B.T.] has a treatment plan at the Human Services Center that provides medications, also other treatment that is consistent with his diagnosis. Need for medications has been discussed with [B.T.] by staff at the Human Services Center and he -- the Court believes he is not able to meaningfully understand the need for the medications.

- There are side effects including being sedated or tired. He could experience weight gain. Additionally, there are movement disorders and there could be more serious disorders. Neuroleptic malignant syndrome is one of them. The Court is also aware that there can be allergic reactions to medications. The staff has observed to train – or trained to observe for side effects and they have not been noted. There was some mention of some sedation or tiredness, but that's not to the point of being problematic. The Court notes that he has shown some improvement, so the benefits outweigh the side effects.

- [I]f [B.T.] does not receive the medication, his condition would not improve or it would deteriorate. If it were to improve, it would be at a significantly slower rate. The testimony was that it could be months before there would be a possibility of him being discharged from the Human Services Center.

[¶11.] The circuit court's subsequent written order restated the court's findings by clear and convincing evidence that B.T. lacked competency and that the administration of psychotropic medication was necessary. The order specifically authorized the HSC "to administer and monitor the administration of psychotropic medication . . . for a period of one year . . . unless terminated earlier pursuant to SDCL 27A-12-3.6."

[¶12.] B.T. appeals, arguing that the evidence was insufficient to support the circuit court's decision. In B.T.'s view, the court should not have credited Dr.

Davidson's testimony, as it did, because he was not B.T.'s attending physician. The absence of Dr. Kleinsasser, B.T. argues, deprived him of the opportunity to challenge his opinions directly. B.T. also claims that the court did not properly consider the side effects of the psychotropic medication before authorizing its use.

## Analysis and Decision

### *Standard of Review*

[¶13.] We review the sufficiency of the circuit court's factual findings under a clearly erroneous standard. *Rabenberg v. Rigney*, 1999 S.D. 71, ¶ 4, 597 N.W.2d 424, 425; *see also Lindquist v. Bisch*, 1996 S.D. 4, ¶¶ 15–16, 542 N.W.2d 138, 140–141 (holding that in the context of an involuntary commitment proceeding, the sufficiency of a circuit court's factual findings present a factual issue that is reviewed for clear error). "Clear error is shown only when, after review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" *Rabenberg*, 1999 S.D. 71, ¶ 4, 597 N.W.2d at 425 (citation omitted).

### *Orders to Medicate*

[¶14.] Generally, "involuntarily committed adults may refuse any psychotropic drugs." *Steinkruger v. Miller*, 2000 S.D. 83, ¶ 5, 612 N.W.2d 591, 594 (citing SDCL 27A-12-3.12; *Rabenberg*, 1999 S.D. 71, ¶ 12, 597 N.W.2d at 426).[2] The fact that a person has been involuntarily committed does not, itself, mean that the person lacks competency to accept or refuse treatment using psychotropic

---

2.  Though no constitutional question is presented here, we have recognized "a substantial liberty interest under the Due Process Clause of the Fourteenth Amendment to refuse psychotropic medication." *Steinkruger*, 2000 S.D. 83, ¶ 16, 612 N.W.2d at 598.

medication. *See* SDCL 27A-12-1.2 ("[N]o person may be deemed incompetent . . . solely by reason of his detention, admission, or commitment under this title.").

[¶15.]    However, if the administrator of the HSC believes the patient lacks competency to refuse psychotropic medication treatment, the administrator may, subject to certain requirements, petition a circuit court or board of mental illness for an order authorizing the administration of the medication without the patient's consent. SDCL 27A-12-3.13.[3] We have interpreted SDCL 27A-12-3.13 to prescribe the requirements necessary for a *petition* to medicate a patient. *See Rabenberg*, 1999 S.D. 71, ¶ 9, 597 N.W.2d at 426 (holding SDCL 27A-12-3.13 "clearly sets forth the criteria that must be met before an administrator . . . may *petition* the circuit court for the authority to administer psychotropic medication").

[¶16.]    As we explained in *Rabenberg*, these criteria include the requirement that two medical professionals, after a personal examination, agree that the use of psychotropic medication "will be medically beneficial to the person and is necessary because: (1) The person presents a danger to himself or others; (2) The person cannot improve or his condition may deteriorate without the medication; or (3) The person may improve without the medication but only at a significantly slower rate." 1999 S.D. 71, ¶¶ 6–9 n.3, 597 N.W.2d at 425–426 n.3 (quoting SDCL 27A-12-3.13 (1999) (amended 2012)).

[¶17.]    The type of medical professionals whose concurrence is necessary for a petition to administer psychotropic medication has varied over the years as a result

---

3.    The provisions of SDCL 27A-12-3.13 also allow a facility director or an attending psychiatrist to seek an order to administer psychotropic medication.

of legislative amendments. For instance, when we decided *Rabenberg* in 1999, the text of SDCL 27A-12-3.13 conditioned the decision to petition for an order to medicate upon the agreement of "the administrator or facility director or attending psychiatrist and the person's treating physician" that the medication would be beneficial and was necessary.

[¶18.] However, the Legislature amended SDCL 27A-12-3.13 in 1999, before our *Rabenberg* decision, to require the concurrence of "the person's treating physician and the medical director or attending psychiatrist[.]" That formulation remains intact in the present version of the statute and was unaffected by 2012 amendments to SDCL 27A-12-3.13 that revised several aspects of the statute not implicated here.[4]

[¶19.] Once a petition seeking an order to medicate is filed, it must be heard by a court or a board of mental illness on an expedited basis pursuant to rules set out in SDCL chapter 27A-12. *See* SDCL 27A-12-3.14 (listing requirements for appointing counsel, service of the petition and the notice of hearing, and scheduling the hearing); SDCL 27A-12-3.19 (stating rights to appear, present evidence, subpoena and cross-examine witnesses). The authority of the court or the board to

---

4. The current version of SDCL 27A-12-3.13 allows courts *and* "boards of mental illness" to authorize the administration of psychotropic medication *and* "such other treatment as may be necessary for the treatment of the person's mental illness, including electroconvulsive therapy[.]" *See Washington v. Harper*, 494 U.S. 210, 215, 110 S. Ct. 1028, 1033, 108 L. Ed. 2d 178 (1990) (holding that an administrative panel may authorize administering medication to a mentally ill prison inmate after a hearing). The Legislature's 2012 amendments to SDCL 27A-12-3.13 also added a specific lack-of-competency determination as a predicate for a petition seeking an order to medicate a patient.

order the administration of psychotropic medication is described in SDCL 27A-12-3.15. This statute requires proof by clear and convincing evidence that the patient lacks the capacity to make a competent decision concerning psychotropic medication and that the medication is "essential under the criteria in § 27A-12-3.13." SDCL 27A-12-3.15; *see also Steinkruger*, 2000 S.D. 83, ¶ 5, 612 N.W.2d at 594 (quoting SDCL 27A-12-3.15).

[¶20.] As a consequence, the three criteria set out in SDCL 27A-12-3.13 as petition requirements also establish the standard for a fact-finder's ultimate findings:

> Psychotropic medication may be court ordered only if it is found to be "essential," "medically beneficial," and "necessary" because the patient (1) "presents a danger to himself or others;" (2) "cannot improve or his condition may deteriorate without the medication;" or (3) "may improve without the medication but only at a significantly slower rate."

*Steinkruger*, 2000 S.D. 83, ¶ 5, 612 N.W.2d at 594 (quoting SDCL 27A-12-3.13, -3.15).

[¶21.] Here, the circuit court correctly applied the law, and its factual determinations regarding B.T.'s competency and the criteria for administering psychotropic medication were based upon competent, and unrebutted, evidence. B.T.'s principal claim to the contrary is that there was insufficient evidence that he was a danger to himself or others. Despite non-specific reports of threatening behavior on the date of his emergency commitment, B.T. argues that there was no evidence that he threatened anyone or presented a danger to himself. *See* SDCL 27A-1-1(6), -(7) (defining "[d]anger to others" and "[d]anger to self"). But even if this claim had merit, it would not impact the outcome here.

[¶22.] Separate and apart from the finding that B.T. was a danger to himself or others, the circuit court also supported its decision to order the psychotropic medication with findings that addressed the other two statutory bases set out in SDCL 27A-12-3.13(2), -(3)—neither of which are challenged on appeal. Based upon the expert medical testimony, the court found specifically that B.T.'s "condition would not improve or it would deteriorate" without psychotropic medication. The court further found that if B.T.'s condition did improve without the medication, "it would be at a significantly slower rate." Any one of these additional determinations that B.T.'s condition would (1) not improve, (2) would deteriorate, *or* (3) would improve at a slower rate without the medication is sufficient to satisfy SDCL 27A-12-3.13.

***Testimony at the Hearing***

[¶23.] B.T. claims that the circuit court erred by "giving substantial weight" to Dr. Davidson's testimony, though he was not B.T.'s attending physician—Dr. Kleinsasser was. The argument is unsustainable for three apparent reasons.

[¶24.] First, B.T. did not object to Dr. Davidson's testimony or, more specifically, did not object to the absence of testimony from Dr. Kleinsasser. The argument is not preserved for appeal, and we could refuse to accept it on this basis alone. *See State v. Fischer*, 2016 S.D. 1, ¶ 12, 873 N.W.2d 681, 686 (quoting *Lindblom v. Sun Aviation, Inc.*, 2015 S.D. 20, ¶ 8 n.2, 862 N.W.2d 549, 552 n.2 ("Ordinarily an issue not raised before the trial court will not be reviewed at the appellate level.")).

[¶25.]     Second, the claim that the circuit court could not order psychotropic medication in the absence of testimony from Dr. Kleinsasser is foreclosed by our decision in *Rabenberg*.  There, we held that SDCL 27A-12-3.13 simply requires "that two individuals concur as to the need for medication" to "*petition* the circuit court . . . ."  1999 S.D. 71, ¶ 9, 597 N.W.2d at 426.  The statute could not, in other words, "be interpreted to set forth a testimonial requirement[.]"  *Id.*

[¶26.]     Though the text of SDCL 27A-12-3.13 has changed as to which two individuals must concur, as indicated above, our holding in *Rabenberg* remains the law.  The concurring opinions regarding the medical benefit and necessity of psychotropic medication only relate to a requirement to petition for an order to medicate and not a compulsory witness requirement for the subsequent hearing.[5]  Rather, the proof at the hearing must demonstrate a patient's inability to make an informed decision about psychotropic medication treatment and the necessity for the medication under the three enumerated criteria set out in SDCL 27A-12-3.13.  1999 S.D. 71, ¶¶12–13, 597 N.W.2d at 426–427.

---

5.     We note that the HSC's petition does not appear to be entirely consistent with the standard under SDCL 27A-12-3.13.  Instead of alleging the concurrence of the attending physician and either the medical director or a treating psychiatrist (as *Rabenberg* would require under the amended text of SDCL 27A-12-3.13), the petition here alleges the concurrence of B.T.'s "treating psychiatrist and a *consulting psychiatrist.*"  (Emphasis added.)  The source of this formulation of the standard is unclear.  The term, "consulting psychiatrist," appears only once in SDCL chapter 27A-12 at SDCL 27A-12-3.16, but the reference in that statute relates to review procedures following an order to medicate a patient.  Regardless, even if the petition here did not strictly comply with SDCL 27A-12-3.13, B.T. has not raised it, and, further, there is no evidence that his rights were impacted.  The record at the evidentiary hearing included competent expert evidence from two psychiatrists, each of whom opined that psychotropic medication would be medically beneficial and was necessary to treat B.T.

[¶27.]   And finally, we have already concluded above that the evidence was sufficient to sustain the circuit court's order.  Dr. Davidson's testimony and Dr. Somepalli's report were admitted without objection, and B.T. did not seriously challenge their opinions that psychotropic medicine was necessary or that he was not competent to consent to the treatment.  There was, for instance, no contrary evidence or argument, and Dr. Davidson's cross-examination by B.T.'s counsel seemed directed at probing Dr. Davidson's opinion that forced medication represented the least restrictive alternative, which Dr. Davidson confirmed.

[¶28.]   B.T. also argues that the absence of Dr. Kleinsasser and Dr. Somepalli at the hearing "unfairly denied him the opportunity to cross examine those who are advocating for the administration of psychotropic medications[.]"  Leaving aside the fact that B.T. did not make this argument at the hearing, the claim also overlooks the fact that Dr. Davidson appeared personally at the hearing, unequivocally opined that psychotropic medication was necessary, and was cross-examined by B.T.'s attorney.

*Consideration of Side Effects*

[¶29.]   B.T.'s additional argument that the circuit court overlooked the side effects of psychotropic medication is belied by the court's express findings regarding the potential side effects Dr. Davidson described.  B.T.'s more specific claim that the administration of psychotropic medication would not reduce his stay at the HSC because he would need to remain there in order to be medically monitored for side effects is not factually supported by the record.  The argument presumes B.T.

cannot return home and be monitored by local medical professionals—a fact not supported directly or circumstantially by evidence contained in the record.[6]

[¶30.] We affirm.

[¶31.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.

---

6. B.T.'s argument also fails to account for SDCL 27A-12-3.7 which sets forth the requirement for development of an aftercare plan under which a patient can obtain services after discharge.